

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00836-CR

Eugene **CASTILLO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR9058
Honorable Kevin M. O'Connell, Judge Presiding

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  August 1, 2018

AFFIRMED

Eugene Castillo appeals his convictions for assaulting his wife, Jeanette, on numerous occasions. Castillo raises four issues challenging the trial court's admission of evidence during the guilt–innocence and punishment phases of trial. We affirm the trial court's judgment.

### BACKGROUND

Castillo was charged by a four-count indictment with aggravated sexual assault, aggravated assault, assault-family violence by choking or strangulation, and multiple instances of violating a protective order by making unauthorized contact with Jeanette. Approximately eighteen months

before trial, Castillo filed a motion for notice of the State's intent to offer evidence of extraneous bad acts under Texas Rules of Evidence 404(b) and 609(f) and Texas Code of Criminal Procedure article 37.07. The State filed an article 37.07 notice nine months before trial, and a second notice on the day of the pretrial hearing and voir dire. At the pretrial hearing, the trial court denied Castillo's objection that the State's second notice was too late and Castillo's corresponding motion in limine. The day after voir dire, before opening statements, Castillo reurged his motion in limine, which the trial court denied.

Castillo pled guilty to the charge of violating a protective order, and not guilty to the remaining three counts. In accordance with Castillo's plea and the trial court's instruction, the jury found Castillo guilty on the charge of violating a protective order. On the remaining three counts, the State presented the testimony of ten witnesses, including Jeanette, before resting. During the State's case-in-chief, the trial court admitted into evidence numerous exhibits, including photographs of Jeanette and her medical records. Generally, the State's evidence showed Castillo physically and emotionally abused Jeanette. Castillo presented the testimony of one witness, and offered no exhibits for admission into evidence. The jury found Castillo guilty on the remaining three counts.

Castillo elected punishment by the court. During the punishment hearing, the trial court admitted over Castillo's objection an audio-recording of Castillo's phone calls from jail. The trial court also heard from several witnesses during the punishment hearing. The trial court pronounced Castillo's sentences at twenty-eight years in prison for aggravated sexual assault, fifteen years in prison for aggravated assault, and ten years in prison for assault-family violence and for violating a protective order. Castillo filed a timely notice of appeal.

## STANDARD OF REVIEW

All of Castillo's issues relate to the admissibility of evidence. "We review the trial court's decision on the admissibility of evidence under an abuse of discretion standard." *Gauna v. State*, 534 S.W.3d 7, 10 (Tex. App.—San Antonio 2017, no pet.) (citing *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016)). "A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement." *Id.* "If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed." *Id.*

## CONFRONTATION CLAUSE

Castillo argues the trial court admitted Jeanette's medical records in violation of the Confrontation Clause. The Sixth Amendment's Confrontation Clause guarantees a defendant the right to confront witnesses who offer testimonial statements against the defendant. U.S. CONST. amend. VI; *Beltran v. State*, 517 S.W.3d 243, 251 (Tex. App.—San Antonio 2017, no pet.). A statement is testimonial if it is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013) (internal quotation marks omitted). Statements made in medical records for treatment purposes are generally not testimonial. *Berkley v. State*, 298 S.W.3d 712, 715 (Tex. App.—San Antonio 2009, pet. ref'd) (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2 (2009)). Ultimately, the Confrontation Clause does not prohibit the admission of a testimonial statement if the witness who offers the testimonial statement takes the stand to be cross-examined. *Id.*

Jeanette's medical records were introduced by Labita Cummings, who is a physician's assistant at the San Antonio Military Medical Center (SAMC). Cummings testified she began treating Jeanette at the end of October 2014. She explained that when she and others at SAMC treat patients, SAMC keeps records of the treatment. Cummings testified the offered medical

records contained Jeanette's SAMC medical records. Cummings's testimony shows Jeanette's medical records were kept for treatment purposes. Her testimony before the jury, and during a hearing outside the presence of the jury, did not establish that any of the statements in Jeanette's SAMC medical records were made under circumstances that would lead an objective witness reasonably to believe the statement would be available for use at a later trial. *See Burch*, 401 S.W.3d at 636.

Castillo asserts, "It is evident that Jeanette['s] . . . medical records contained testimonial hearsay." Although the admitted medical records consist of nearly 140 pages, in arguing the trial court erred by admitting the medical records, Castillo does not specifically refer to any statement in the medical records that is evidently testimonial. In his harm analysis, Castillo cites several statements from medical records relating to Jeanette's complaint of an assault and to Castillo's prosecution. However, these statements were all contained in medical records created by Cummings for Jeannette. Castillo had the opportunity to cross-examine Cummings and Jeannette at trial and therefore the statements in Jeanette's medical records are not inadmissible under the Confrontation Clause. *See id.* We hold Castillo has failed to show the trial court's admission of Jeanette's medical records violated the Confrontation Clause. *See Beltran*, 517 S.W.3d at 251; *Berkley*, 298 S.W.3d at 715.

**INSUFFICIENT NOTICE OF EXTRANEOUS BAD ACTS**

Castillo argues the trial court erred by admitting evidence of several extraneous bad acts without adequate notice. On timely request of the defendant, the State must give the defense notice of its intent to introduce evidence of an extraneous crime or bad act that has not resulted in a final conviction. TEX. CODE CRIM. PROC. art. 37.07. "The purpose of the notice requirement is to enable the defendant to prepare to meet the extraneous offense evidence." *Segovia v. State*, 467 S.W.3d 545, 553 (Tex. App.—San Antonio 2015, pet. ref'd).

Castillo complains the trial court erred by admitting Jeanette's testimony that he threatened to kill Jeanette's family if she called the police. When Jeanette testified about the threats against her family, Castillo did not object. Preserving a complaint for appellate review requires a party to raise a timely, specific objection at trial. *See* TEX. R. APP. P. 33.1(a). Failure to do so waives any complaint on appeal. *See id.* "For error to be preserved with regard to the subject matter of [a] motion in limine, it is absolutely necessary that an objection be made at the time when the subject is raised during the trial." *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex. Crim. App. 1985). Because Castillo did not object to Jeanette's testimony when she testified, and his motion in limine regarding this extraneous bad act did not preserve his complaint for appeal, we hold Castillo's complaint as to this testimony is waived. *See id.*; *see also Morales v. State*, No. 04-02-00342-CR, 2003 WL 22715602, at *3 (Tex. App.—San Antonio Nov. 19, 2003, pet. ref'd) (mem. op., not designated for publication).[1]

Castillo also argues the trial court erred by admitting, over his no-notice objection, Jeanette's testimony that Castillo had thrown weights all over the living room and one weight through the wall into the guest bedroom of his and Jeanette's house. When Castillo objected to the lack of notice, the State argued Castillo "opened the door" because Castillo had intimated that Jeanette falsified her allegations against him in retaliation for another occasion when he had damaged their house. Castillo notes "the Court agreed that . . . the door was opened when defense asked Jeanette about the house on cross-examination." Although Castillo contends Jeanette's testimony about the extraneous bad act is inadmissible based on insufficient notice, "inadmissible evidence may become admissible when a party 'opens the door' to such evidence." *Kulow v. State*,

---

[1] The State's first notice stated the State intended to introduce evidence that Castillo "did commit the offenses of threatening a crime with intent to terrorize." Castillo does not argue the State's first notice gave insufficient notice of the State's intent to offer evidence of this extraneous bad act.

524 S.W.3d 383, 387 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (citing *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009)). "A party opens the door by leaving a false impression with the jury that invites the other side to respond." *Id.* Our standard of review requires that we not disturb a trial court's ruling if it is correct on any theory of law applicable to the case. *See Gauna*, 534 S.W.3d at 10. And "[a]n appellant must attack all independent grounds supporting a trial court's ruling." *Marsh v. State*, 343 S.W.3d 475, 479 (Tex. App.—Texarkana 2011, pet. ref'd). Castillo does not challenge the trial court's determination that he opened the door to Jeanette's testimony stating that he destroyed their house on a prior occasion. We therefore overrule Castillo's issue as to the admissibility of Jeanette's testimony about the damage Castillo did to their house.

Castillo further argues the trial court erred by admitting Jeanette's testimony that he came to a military base where she worked, yelled at her supervisors, and was arrested. He also complains about Jeanette's brother-in-law testifying Castillo was "put into a psych ward." We begin our discussion of these arguments by considering the context in which the brother-in-law made the "psych ward" comment:

> Q (By [THE STATE]) . . . Did [Castillo] talk about anything other than this military stuff going on? Did he talk to you about other things? Did he talk to you about –
>
> A Oh, yeah. We had a lot of conversations. A lot of things were going on. He had gotten arrested on base. He had went to her work center and apparently caused some type of ruckus there, so –
>
> Q Did he tell you about that?
>
> A Yes.
>
> Q Okay.
>
> A He told me about that, that he went over there and he was upset. He was going to go talk to the first shift commander, something like that, and basically he was going in to demand answers, if you will. And I guess he was getting -- he got into

a verbal argument with I forget, one of her supervisors there, and they ended up calling the police on him.

Q Okay. But -- okay. Aside from all the military stuff, did he talk to you about anything else?

A Yeah. Well, he talked about like how he -- after that he got put into a psych ward –

[DEFENSE COUNSEL]: Objection, Your Honor. This is a violation of our 404(b).

[THE STATE]: I didn't -- that question didn't call for that answer.

THE COURT: Okay. Well, he's your witness, so –

[THE STATE]: Okay.

THE COURT: Okay? Jury, please disregard his last answer, if you even understood it. Do you want to talk to your witness or do you want to continue without –

[THE STATE]: No. We can -- we can continue.

Castillo did not further object to the brother-in-law's testimony or to how the trial court addressed his complaint as to the brother-in-law's "last answer."

In light of the above-quoted testimony, we first address Castillo's complaint that the trial court erred by admitting Jeanette's testimony about Castillo's arrest on the military base. "Generally, the improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial." *Wilkinson v. State*, 523 S.W.3d 818, 827 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd); *see Kou v. State*, 536 S.W.3d 535, 541 (Tex. App.—San Antonio 2017, pet. ref'd) (citing TEX. R. APP. P. 44.2(b)). Because Jeanette's brother-in-law testified Castillo was arrested on a military base without objection,[2] the trial court's

---

[2] It is clear from the transcript that the trial court understood Castillo's "objection . . . violation of our 404(b)" to be an objection only to the statement that Castillo was once in a "psych ward." Furthermore, even if this objection were sufficient as to both extraneous bad acts, the trial court did not expressly rule on the objection as required for the complaint to be preserved on appeal. *See* TEX. R. APP. P. 33.1(a).

error, if any, in admitting Jeanette's testimony about the same facts is not reversible. *See Kou*, 536 S.W.3d at 541; *Wilkinson*, 523 S.W.3d at 827.[3]

We next address Castillo's complaint about the "psych ward" comment. Although Castillo objected to the testimony for lacking sufficient notice under Rule 404(b), preserving a complaint for appellate review requires an adverse ruling on the objection or, if the trial court refuses to rule on the objection, an objection to the refusal to rule. *See* TEX. R. APP. P. 33.1(a). The trial court's response to Castillo's objection was not adverse; the trial court promptly instructed the jury to disregard the objected-to statement. The trial court did not make any other ruling on Castillo's objection, and Castillo did not further object that the instruction was insufficient. We therefore hold Castillo has not preserved a complaint regarding the "psych ward" comment for our review. *See id.*

## AUDIO RECORDINGS OF CASTILLO'S CALLS FROM JAIL

Castillo contends that during the punishment hearing, the trial court erred by admitting audio recordings of calls he made from jail to his family. Castillo asserts the audio recordings were hearsay and the sponsoring witness was not the "custodian of records or another qualified witness." "Rule 803(6) of the Texas Rules of Evidence provides that records kept in the course of a regularly conducted business activity are not excluded by the hearsay rule." *Kan v. State*, 4 S.W.3d 38, 45 (Tex. App.—San Antonio 1999, pet. ref'd) (citing TEX. R. EVID. 803(6)). The necessary predicate for introduction of such a business record may be shown by offering the testimony of a custodian of records or another qualified witness. *Id.*

---

[3] In a separate issue, Castillo argues the trial court's admission of extraneous offense evidence violated his due process rights under the Fourteenth Amendment and should be reviewed as constitutional error. However, "[t]he erroneous admission of evidence is nonconstitutional error." *Gigliobianco v. State*, 179 S.W.3d 136, 145 (Tex. App.—San Antonio 2005), *aff'd*, 210 S.W.3d 637 (Tex. Crim. App. 2006). We therefore review the trial court's error, if any, as nonconstitutional error. *See Kou*, 536 S.W.3d at 541 (citing TEX. R. APP. P. 44.2(b)).

The audio files containing recordings of Castillo's jail calls were introduced by Octavia Mitchell, a classification supervisor at the Bexar County Sheriff's Office. Mitchell testified she is the custodian of records for recordings of inmate's jail calls, which are kept in the regular course of business. She also explained the calls are automatically recorded and are kept in the regular course of business. Mitchell stated the audio files are kept by a company, IC Solutions, located in the Sheriff's Office. Mitchell testified she did not "pull" the specific audio files offered by the State, but she has the capability of accessing the jail call recordings directly from her computer and that the audio files offered by the State were what they purported to be. Castillo does not explain why Mitchell was not a qualified witness to lay the predicate for the audio files being kept in the regular course of business. *See* TEX. R. APP. P. 38.1(i). Based on the issue and arguments that Castillo presents on appeal, we cannot say the trial court's decision to admit the audio recordings was outside of the zone of reasonable disagreement or that the trial court abused its discretion by admitting the audio recordings of Castillo's jail calls. *See Gauna*, 534 S.W.3d at 10.

## CONCLUSION

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH