

# IN THE
# TENTH COURT OF APPEALS

No. 10-17-00057-CR
No. 10-17-00058-CR

KEVIN MICHAEL COFFEY,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 443rd District Court
Ellis County, Texas
Trial Court Nos. 40,456CR and No. 40,458CR

## MEMORANDUM OPINION

Appellant Kevin Michael Coffey was found guilty by a jury of indecency with a child and sexual assault of a child and was sentenced to twenty years' incarceration in each indictment. The trial court ordered Coffey's sentences to run consecutively. In five issues, Coffey challenges his conviction and sentence. We will affirm.

## *Background*

The evidence introduced at trial reflects that Coffey, who was the Chief of Police for the Maypearl Police Department, sexually assaulted a fourteen-year-old female,

identified in the indictments as "Jane," who was a previous victim of a sexual assault. The investigation of Coffey began when the Ellis County Sheriff's Office was notified by V.R. of some inappropriate texts sent by Coffey to her fifteen-year-old daughter, T.R. T.R. is a different victim from Jane. The Texas Rangers were contacted to conduct an investigation.

T.R. told the investigators, and testified at trial, that she first met Coffey when she was assigned to perform community service, which involved cleaning City Hall where Coffey's office was also located. Coffey told T.R. that she was "pretty" and "beautiful" and that her "ass" looked good in her jeans, and they began communicating almost every day. Coffey would drive to T.R.'s home in his patrol car and flash his lights for her to come outside. Coffey allowed T.R. to play with the controls in the patrol car and would take pictures of her. Coffey communicated with T.R. electronically, once sending her a message that he wanted to handcuff her and bend her over and smack her ass. Coffey additionally took no action when he saw T.R. using or in possession of drugs. T.R. eventually went to drug rehabilitation and started changing her life, which included reporting Coffey's inappropriate communications with her. T.R. told investigators that there were additional girls that Coffey was in contact with.

While search warrants were being executed on Coffey's residence and office, Coffey mentioned Jane as a juvenile with whom he may have had inappropriate communications. Jane, who was sixteen years old when she testified at trial, first developed a relationship with Coffey when she was fourteen. Jane was homeschooled and would travel with her father while he was working, including when he would do

work for the City of Maypearl. While Jane's father was occupied, Jane would wait in Coffey's office and talk with him. Jane and Coffey began talking through Facebook, and Coffey began telling Jane that she was "sexy" and "beautiful." Jane and Coffey also began talking on Skype, where their exchanges became more sexual and included nudity and masturbation. When they subsequently met in Coffey's office, Coffey began kissing and touching Jane, rubbing her vagina over her clothes. Coffey soon progressed to placing his hands inside her clothing and penetrating her vagina. Jane testified that Coffey would at times stand behind her and "smack" her butt and grope her vagina, butt, and breasts. Coffey would also rub his penis against her butt. Jane noted that their encounters occurred while Coffey's door was open because he said he liked the adrenaline of the risk of getting caught. Jane believed that she was in love with Coffey, but became upset when she heard about the investigation of Coffey and his interactions with other girls. Jane confessed to her mother that she was one of Coffey's victims, and her mother contacted the police.

A search of the electronic devices recovered from Coffey's residence revealed the names of additional young women who had been victimized by Coffey. Coffey had been using his position as a law enforcement officer for over fifteen years to befriend troubled, young teen-aged girls. Coffey would then groom them to participate in sexual activities with him, including exchanging nude photographs and videos, exchanging pornographic electronic messages, and participating in inappropriate physical contact.

## *Issues Presented*

Coffey presents the following issues:

(1) The trial court erred in denying the Motion to Suppress because the warrant failed to provide for the examination and analysis of the digital evidence seized.

(2) The trial court erred in deciding that the extraneous offenses were admissible pursuant to Article 38.37, Section 2(b).

(3) Article 38.37, Section 2(b) is unconstitutional in that it violates the Due Process Clause of the Fourteenth Amendment.

(4) Appellant's sentence violates his constitutional rights pursuant to the Eighth Amendment to the United States Constitution as the sentence is grossly disproportionate to the crime and inappropriate to the offender.

(5) Appellant's sentence violates his constitutional rights pursuant to Article I, Section 13 of the Texas Constitution as the sentence is grossly disproportionate to the crime and inappropriate to the offender.

## *Discussion*

1. Motion to Suppress. In his first issue, Coffey asserts that the trial court erred in denying his motion to suppress. Three search warrants were issued in this case. The first two warrants were for Coffey's residence and place of work and provided for the seizure of electronic devices. After Coffey filed his motion to suppress, the State obtained a third search warrant that specifically requested authority to search the electronic devices that were seized.

Coffey's specific argument is unclear. Coffey identifies the issue in the "Issues Presented" section, and as the heading to Issue One, thusly: "The trial court erred in denying the Motion to Suppress because the warrant failed to provide for the examination and analysis of the digital evidence seized." In the body of his brief, Coffey notes:

> The initial search warrants stated that evidence was sought to show that Coffey had in his possession evidence showing the offenses of "Official Oppression, Misuse of Official Information, Online Solicitation of a Minor, Stalking, Harassment, and Tampering with Evidence". (RR-12: 8, 15). Coffey was never charged with any of the listed offenses. (RR-4: 6). Thus, probable cause for the initial warrants was lacking. The subsequent warrant could not cure the illegal seizure of any evidence found pursuant to the illegal analysis/examination as it became fruit of the poisonous tree. Therefore, the evidence found during the original and subsequent analysis of the digital media was inadmissible. Trial counsel obtained a running objection to the admission of this evidence. (RR-7: 62-64, 117, 143, 176; RR-8: 103).

When a defendant appeals the denial of a motion to suppress on the ground that a warrant lacked probable cause, "a reviewing court must uphold the magistrate's decision so long as the magistrate had a substantial basis for concluding that probable cause existed." *Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012). The reviewing court may "look only to the four corners of the supporting affidavit," and the court should "view the magistrate's decision to issue the warrant with great deference." *Id.* (footnoted citation omitted). The supporting affidavit should be reviewed in "a commonsensical and realistic manner. . . ." *Id.* (quoting *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011)). "Although the reviewing court is not a 'rubber stamp,' 'the

magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon *de novo* review.'" *Id*. (quoting *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010)).

To the extent Coffey is arguing that the initial warrants lacked probable cause because he was not subsequently charged with any of the offenses listed in the warrants or the affidavits supporting the warrants, the State argues that Coffey did not preserve this issue. Assuming without deciding that the issue is preserved, Coffey offers no support for this claim. We conclude that this issue is inadequately briefed and, therefore, presents nothing for review. *See* Tex. R. App. P. 38.1(i); *see also Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008) (quoting Tex. R. App. P. 38.1(i)) ("This Court has no obligation to construct and compose appellant's issues, facts, and arguments 'with appropriate citations to authorities and to the record.'").

To the extent Coffey is arguing that the officers exceeded the parameters of the original two search warrants by analyzing the electronic devices, the error, if any, was resolved by the issuance of the third search warrant because the information supporting the third warrant was obtained from a source that was independent of any information obtained from the electronic devices. *See Wehrenberg v. State*, 416 S.W.3d 458, 468 (Tex. Crim. App. 2013) ("evidence obtained pursuant to an independent source, much like evidence for which a prior taint has been attenuated, is not 'obtained' in violation of the law and is thus not subject to suppression.").

The third warrant specifically authorized officers to conduct forensic analyses of the electronic devices that were seized from Coffey pursuant to the first two warrants. The affidavit in support of the third warrant was not based upon information that officers viewed on the electronic devices, but upon information provided by Coffey during the execution of the first two search warrants. The affidavit in support of the third warrant notes that Coffey identified Jane as a young female with whom he had inappropriate communications. The affidavit also noted that a forensic interview with Jane revealed that Coffey had penetrated her sexual organ with a finger and that he had engaged in other sexual contact with her. Jane also told investigators that she had communicated with Coffey through "text messaging and video messaging systems or applications."

The trial court did not abuse its discretion in denying Coffey's Motion to Suppress. We overrule Coffey's first issue.

2. Constitutionality of Article 38.37, Section 2(b). In his third issue, Coffey asserts that article 38.37, section 2(b) of the Code of Criminal Procedure is unconstitutional in that it violates the Due Process Clause of the Fourteenth Amendment. Coffey specifically argues that the statute violates due process because he was tried for offenses that were not included in either indictment. We have previously concluded that this statute is constitutional. *See Martinez v. State*, No. 10-16-00397-CR, 2018 WL 2142742, at **5-6 (Tex. App.—Waco May 9, 2018, no pet.) (mem. op., not designated for publication);[1] *see also*

---

[1] Rule 47.7(a) of the Rules of Appellate Procedure provides that unpublished memorandum opinions not designated for publication have no precedential value but may be cited with the notation, "(not designated

*Balboa v. State*, No. 10-15-00024-CR, 2016 WL 363985, at *4 (Tex. App.—Waco Jan. 28, 2016, pet. ref'd) (mem. op., not designated for publication). A majority of the intermediate courts of appeals have also concluded that the statute is constitutional. *See Coburn v. State*, No. 05-17-00819-CR, 2018 WL 3424364, at *9 (Tex. App.—Dallas July 16, 2018, no pet.) (mem. op., not designated for publication) and cases cited therein:

> **First Court of Appeals:** *Buxton v. State*, 526 S.W.3d 666, 685–89 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); **Second Court of Appeals:** *Gusman v. State*, No. 02-18-00157-CR, 2018 WL 3060213, at *3 (Tex. App.—Fort Worth June 21, 2018, [pet. ref'd]) ([mem. op.,] not designated for publication) (holding that Article 38.37, § 2 does not violate a defendant's right to due process); *see also McNamara* [*v. State*, No. 02-16-00422-CR], 2018 WL 2248665, at *7 [(Tex. App.—Fort Worth May 17, 2018, pet. ref'd)] (noting that if the defendant had preserved his constitutional complaint, the Second Court of Appeals "would have joined our sister courts in holding article 38.37, section 2(b) constitutional"); **Third Court of Appeals:** *Robisheaux v. State*, 483 S.W.3d 205, [210-11] (Tex. App.—Austin 2016, pet. ref'd); **Fourth Court of Appeals:** *Burke v. State*, No. 04-16-00220-CR, 2017 WL 1902064, at *2 (Tex. App.—San Antonio May 10, 2017, pet. ref'd) ([mem. op.,] not designated for publication); **Fifth Court of Appeals:** *Mayes v. State*, No. 05-16-00490-CR, 2017 WL 2255588, at [*]*18–19 (Tex. App.—Dallas May 23, 2017, pet. ref'd) ([mem. op.,] not designated for publication); *Fronek v. State*, No. 05-14-01118-CR, 2016 WL 3144243 (Tex. App.—Dallas June 6, 2016, pet. ref'd) ([mem. op.,] not designated for publication); [**Eighth**] **Court of Appeals:** *Carrillo v. State*, No. 08-14-00174-CR, 2016 WL 4447611, at [*]*8-9 (Tex. App.—El Paso Aug. 24, 2016, no pet.) (not designated for publication); **Seventh Court of Appeals:** *Bezerra v. State*, 485 S.W.3d 133, 139-40 (Tex. App.—Amarillo 2016, pet. ref'd); **Ninth Court of Appeals:** *Holcomb v. State*, No. 09-16-00198-CR, 2018 WL 651228, at *2 (Tex. App.—Beaumont Jan. 31, 2018, pet. ref'd) ([mem. op.,] not designated for publication); **Tenth Court of Appeals:** *Martinez . . .* 2018 WL 2142742, at *6. . .; *Gates v. State*, No. 10-15-00078-CR, 2016 WL 936719, at *4 (Tex. App.—Waco Mar. 10, 2016, pet. ref'd) ([mem. op.,] not designated for publication); **Twelfth Court of Appeals:** *Belcher v. State*, 474 S.W.3d 840, 843-47 (Tex. App.—Tyler 2015, no pet.); **Thirteenth Court of Appeals:** *Chaisson v. State*, No. 13-16-00548-CR, 2018 WL 1870592, at *5 (Tex. App.—Corpus Christi April 19, 2018, pet. filed)

for publication)." Unpublished memorandum opinions are persuasive rather than binding precedent that the court may follow or reject. *See Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

([mem. op.,] not designated for publication); **Fourteenth Court of Appeals:** *Harris v. State*, 475 S.W.3d 395, 398-403 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

In a published opinion, the Sixth Court of Appeals has also found Article 38.37 constitutional. *See Harty v. State*, 552 S.W.3d 928, 933-34 (Tex. App.—Texarkana 2018, no pet.). Based upon our previous rulings, and those of our sister courts, we overrule Coffey's third issue.

3. Extraneous Offenses. In his second issue, Coffey argues that the trial court erred in ruling that several extraneous offenses were admissible pursuant to article 38.37, § 2(b). TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). The State filed a notice of its intention to present the testimony of other women who had been preyed upon by Coffey when they were underage. After a pretrial hearing, the trial court ruled that extraneous offenses related to these three witnesses were admissible under article 38.37 and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Coffey argues that this testimony was inadmissible under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403.

A.H., who was thirty years old at the time of the hearing, testified that Coffey repeatedly touched her inappropriately when she was fourteen. Coffey was a police officer in the town where A.H. lived. Their relationship progressed from conversing to physical contact. On one occasion, A.H. was out drinking with friends at a public ball park late at night. Coffey met A.H. there and began kissing her. Coffey also put his hands down A.H.'s pants to touch her vagina. A.H. testified that Coffey told her how much he wanted to "touch [her] pussy" and "smack [her] ass." Coffey took A.H. to dinner for her

fifteenth birthday and bought her an alcoholic drink. Coffey took A.H. to his home after they ate and made her another alcoholic drink. A.H. testified that she and Coffey "made out" on Coffey's bed, where he touched her breasts and vagina. Coffey also took suggestive pictures of her. A.H. testified further that Coffey kissed her and reached down her pants to touch her while they were in his patrol car.

A recording of C.B., Coffey's daughter, was also offered at the hearing. C.B., whose parents were divorced, recounted an incident that occurred when she was sixteen and staying with Coffey. Coffey offered to help C.B. take a suggestive picture for C.B.'s boyfriend. Coffey rubbed ice on C.B.'s nipples after she removed her bra and unbuttoned her shirt. Coffey then took a photograph of her.

Ranger Adam Sweaney and an investigator from the district attorney's office testified regarding nude photographs of A.B. that were recovered from Coffey's computer. Sweaney testified that A.B. told him during an interview that the pictures were taken when she was between eleven and sixteen years of age. The photographs were not taken by Coffey. The investigator testified that Coffey was familiar with A.B. because she had been reported as a runaway. A.B.'s mother gave the Maypearl Police Department A.B.'s cell phone, which had a camera, to assist them in locating her. Coffey had access to any photos that were stored on the phone.

We review a trial judge's decision on the admissibility of extraneous evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). As long as the trial court's ruling is not outside the "zone of reasonable disagreement," there is no abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010);

*see also Newton v. State*, 301 S.W.3d 315, 317 (Tex. App.—Waco 2009, pet. ref'd). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011); *see also Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016) ("If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling.").

Extraneous offenses are generally not admissible during the guilt phase of a trial in order to prove that a defendant committed the charged offense in conformity with a bad character. TEX. R. EVID. 404(b); *Devoe*, 354 S.W.3d at 469. However, article 38.37 creates an exception for certain cases, including those involving indecency with a child and sexual assault of a child. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1)(B), (b). Under § 2, evidence that the defendant committed a separate offense may be admitted at trial for any bearing it has on relevant matters, including the defendant's character and acts performed in conformity with that character. *Id.* Article 38.37 section 2 supersedes Rule 404(b). *Gauna v. State*, 534 S.W.3d 7, 10 (Tex. App.—San Antonio 2017, no pet.); *Hitt v. State*, 53 S.W.3d 697, 705 (Tex. App.—Austin 2001, pet. ref'd).

However, even otherwise admissible evidence may be excluded under Rule 403 if its probative value is substantially outweighed by a danger of "one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. While extraneous acts may be relevant under article 38.37, the trial court must still "conduct a Rule 403 balancing test upon proper objection or request." *Gauna*, 534 S.W.3d at 10 (quoting

*Belcher*, 474 S.W.3d at 847.  When undertaking a Rule 403 analysis, the trial court must

balance

> (1) the inherent probative force of the proffered item of evidence along with
> (2) the proponent's need for that evidence against (3) any tendency of the
> evidence to suggest decision on an improper basis, (4) any tendency of the
> evidence to confuse or distract the jury from the main issues, (5) any
> tendency of the evidence to be given undue weight by a jury that has not
> been equipped to evaluate the probative force of the evidence, and (6) the
> likelihood that presentation of the evidence will consume an inordinate
> amount of time or merely repeat evidence already admitted. Of course,
> these factors may well blend together in practice.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnote omitted);

*Newton*, 301 S.W.3d at 319.  "'[P]robative value' refers to the inherent probative force of

an item of evidence—that is, how strongly it serves to make more or less probable the

existence of a fact of consequence to the litigation—coupled with the proponent's need

for that item of evidence."  *Casey v. State,* 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

Rule 403 does not permit the trial court to exclude relevant evidence when that

evidence is merely prejudicial—it must be unfairly prejudicial.  *Alvarez v. State*, 491

S.W.3d 362, 370 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).  "Evidence is unfairly

prejudicial when it tends to have some adverse effect upon the defendant beyond tending

to prove the fact or issue that justifies its admission into evidence."  *Gerron v. State*, 524

S.W.3d 308, 321 (Tex. App.—Waco 2016, pet. ref'd).  Rule 403 should be used sparingly

and envisions exclusion only where there is a "clear disparity between the degree of

prejudice of the offered evidence and its probative value."  *Hammer v. State*, 296 S.W.3d

555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim.

App. 2001)); *see also Hedrick v. State*, 473 S.W.3d 824, 833 (Tex. App.—Houston [14th Dist.]

2015, no pet.). Trial courts should favor admission in close cases. *Casey*, 215 S.W.3d at 879.

Coffey argues that the extraneous evidence was not necessary to obtain a conviction in this case. However, while Coffey admitted that he had exchanged inappropriate communications with Jane, he denied that he had ever touched her. The only evidence that Coffey improperly touched Jane was Jane's testimony. Evidence of extraneous offenses in such a circumstance has been found admissible. *See Wheeler v. State*, 67 S.W.3d 879, 888-89 (Tex. Crim. App. 2002) (extraneous offense testimony showed event quite similar to that charged); *see also Alvarez*, 491 S.W.3d at 371 (quoting *Belcher*, 474 S.W.3d at 848) ("Because the evidence of prior sexual abuse of children 'was especially probative of Appellant's propensity to sexually assault children,' the Rule 403 balancing test normally will not favor the exclusion of evidence of the defendant's prior sexual assaults of children.").

Coffey also argues that the testimony of A.H. and C.B. was remote in time to the charged conduct and took up a large portion of the trial testimony, distracting the jury from consideration of the indicted offenses. However, "remoteness alone is not sufficient to render an extraneous offense excludable under Rule 403." *Gaytan v. State*, 331 S.W.3d 218, 226 (Tex. App.—Austin 2011, pet. ref'd). "[R]emoteness is but one aspect of an offense's probativeness." *Id*.

The similarities of the experiences of Jane, A.H., and C.B. weigh in favor of the admission of their testimony despite any resulting prejudice. All of the women were young teenagers who were troubled or came from broken homes. They were vulnerable

to a male authority figure, whether law enforcement or paternal. Both Jane and A.H. were groomed by Coffey, starting with complements and escalating to sexual contact. Coffey used the same graphic language when talking about what he wanted to do to Jane and A.H. Coffey also touched them in the same manner. The nude and suggestive photographs of A.B. that Coffey downloaded from A.B.'s cell phone paralleled the manner Coffey treated the other girls, including Jane. Coffey either photographed the girls in nude or sexually suggestive poses or managed to obtain such photographs from social media and stored them on his computer or other electronic devices.

In summary, the prejudicial effect of the extraneous offenses did not substantially outweigh their probative value. The trial court did not abuse its discretion in permitting the introduction of the extraneous offenses. We overrule Coffey's second issue.

4. Disproportionate Sentencing. In his fourth and fifth issues, Coffey argues that his sentence is grossly disproportionate to the crimes for which he was convicted and inappropriate to the offender under the Eighth Amendment to the United States Constitution and Article I, Section 13 of the Texas Constitution. *See* U.S. CONST. amend. VIII; *see also* TEX. CONST. art. I, § 13.

A disproportionate-sentence claim must be preserved for appellate review. *See* TEX. R. APP. P. 33(a)(1); *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996); *Mercado v. State*, 718 S.W.2d 291, 296 (Tex. Crim. App. 1986) (en banc); *see also Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Mitchell v. State*, No. 10-18-00178-CR, 2019 WL 757853, at *1 (Tex. App.—Waco Feb. 20, 2019, no pet.) (mem. op., not designated for publication). At trial, Coffey did not object to the imposed

sentence. Further, Coffey did not raise a disproportionate-sentence claim in his motion for new trial or otherwise present a post-trial objection to the imposed sentence. Thus, Coffey's complaints in these two issues are not preserved. We overrule Coffey's fourth and fifth issues.

## *Conclusion*

Having overruled all of Coffey's issues, we affirm the judgment of the trial court.


REX D. DAVIS
Justice

Before Chief Justice Gray,*
    Justice Davis, and
    Justice Neill
    *(Chief Justice Gray concurs in the judgment only. No separate opinion will issue.)
Affirmed
Opinion delivered and filed June 19, 2019
Do not publish
[CRPM]

